Charity L. Phillips (Pro Se)
1902 Rutherford Drive
Dover, FL 33527

FILED
2016 AUG -3 PM 2: 01

In the United States District Court for the Middle District of

Florida

CHARITY L. PHILLIPS,                    ) Case No.: 8:16cv2227T35 AAS
                                        )
           Plaintiff,                   ) Conspiracy To Interfere With
                                        ) Civil Rights
    vs.                                 )
                                        )
VERIZON COMMUNICATIONS, INC.,           )
                                        )
TAMPA POLICE DEPARTMENT,                )
                                        )
INTERNATIONAL BROTHERHOOD OF

ELECTRICAL WORKERS (IBEW 824)

           Defendant
_____

This is an action under Title VII of the Civil Rights Act of 1964, as codified U.S.C.A. 42 § 2000e-2(a)(1), for discrimination on the basis of sex and retaliation. Furthermore, this action is brought pursuant to U.S.C.A. 29 § 158(b)(1) for unfair labor practices and U.S.C.A. 42 § 1985(3) for conspiracy to interfere with civil rights. State law causes of action for intentional infliction of severe emotional distress, are also brought pursuant to the supplemental jurisdiction of this court.

### Jurisdiction and Venue

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331, 1343, and 1367. This action is authorized and instituted pursuant to U.S.C.A. 42 § 2000e-5(f)(3) and U.S.C.A. 42 § 2000e-5(g)(1).

2. The unlawful employment and labor practices alleged were committed within the jurisdiction of the District Court.

### Statement of Facts

3. All conditions precedent to the institution of this action have been fulfilled as set forth in U.S.C.A. 42 § 2000e-5(e)(1). Plaintiff filed a Charge of Discrimination with the

Equal Employment Opportunity Commission on March 17th 2016. The EEOC issued a Notice of Right to Sue to Plaintiff on May 2nd 2016. The present action is being brought within 90 days of Plaintiff's receipt of the Notice of the Right to Sue.

4. Plaintiff, a female, began her employment with Defendant as a Customer Contact Sales Associate on November 30th 2015. Her employment was terminated on December 30th 2015.

5. At all relevant times, Plaintiff performed her duties in an acceptable, professional, and highly competent manner.

6. But for the matters complained of in this complaint, Plaintiff would still be an employee of Defendant.

7. From the start of Plaintiff's employment up until termination, Defendant engaged in unlawful employment practices violating Title VII, U.S.C.A. 42 § 2000e et seq. Defendant permitted an environment permeated with discriminatory ridicule, intimidation, humiliation and insults of such a severe nature that it greatly affected Plaintiff's working conditions. Plaintiff experienced this continuous harassment from both co-workers and supervising trainer, Kia Owens, (Owens). Defendant had knowledge of and mentioned private details of Plaintiff's life, which were not given by Plaintiff. On several occasions, when Plaintiff walked into the training class, sexual comments were made. These comments too numerous to detail, made reference to plus size women and women with "big butts." These comments humiliated Plaintiff, as she is considered a plus size woman.

8. The main trainer, Owens, talked about pornography multiple times. On one of these occasions she specifically mentioned a woman who wanted to "kill herself as a result of finding out her significant other was watching gay porn."

9. Plaintiff made it clear to supervisor that these comments were unwelcome. On one occasion she specifically asked Defendant, Owens, if the conversation could be kept professional. At which time, Defendant laughed and continued with the derogatory remarks. After this request, Plaintiff's work environment became even more abusive.

10. The harassment consisted of behavior and threats that were physically threatening to Plaintiff. Remarks about suicide and mental instability were constantly made. On one occasion, Defendant, Owens, stated to Plaintiff "kill yourself or we'll do it for you." Defendant, Michael Brooks (Brooks), was specifically advised to target Plaintiff by intimidating her. Defendant, Brooks, violated her personal space on multiple occasions by following closely behind her. Defendant, Brooks, moved seats several times during the course of training, purposefully sitting in Plaintiff's personal space. The Defendant's other employees were advised to tale employee and bump into her.

11. Facially neutral behavior such as coughing, clearing of the throat, and slamming objects was also used to harass Plaintiff. When done intentionally, this type of behavior is considered a "noise-campaign." On every occasion, upon entering the class, Defendant's employees would loudly cough, clear their throats and slam objects in an attempt to startle Plaintiff. When

taking the required verbal assessments, Defendant's employees and managers engaged repeatedly in this behavior in an attempt to cause Plaintiff to fail by distracting her.

12. Plaintiff was constantly given conflicting and erroneous information in an attempt to "gas-light" her. "Gas-lighting" is an abusive method used to manipulate (someone) by psychological means into questioning their own sanity." Specifically, Plaintiff was advised that benefits for Defendant's employees begin on the first day of employment. Plaintiff was then advised by Defendant, Owens, that benefits begin three months after the date of employment. When Plaintiff registered for benefits on Defendant's internal site, the start date for said benefits was listed as February 29th 2016. Plaintiff later received a letter on approximately January 27th 2016 from Defendant's benefits department stating Plaintiff had active coverage at the time she was terminated, December 30th 2015. Plaintiff then spoke with a representative, Barbara, from Defendant's benefits department who confirmed Plaintiff had available coverage on the first day of employment, November 30th 2015.

13. J. Wieland and D. Baumgardner are police officers employed by the Tampa Police Department.

14. On December 7th 2015, the above-named Defendants, Wieland and Baumgardner, and others at present unknown to Plaintiff, conspired with Defendant, Verizon, to deprive Plaintiff of her Fourteenth Amendment right to equal protection in violation of 42 U.S.C.A. § 1985(3).

15. On December 7th 2015, Plaintiff noticed that her keys were missing. Plaintiff retraced her steps to ensure keys were not "misplaced." Plaintiff asked Defendant, Owens, if she'd seen the keys to which she replied "no." Plaintiff then checked with security (lost and found) located on the building's first floor. The security guard stated that no keys were turned in that day. Plaintiff asked security guard if there were other lost and found locations in the building. To which he replied no and asked Plaintiff which floor she worked on. Plaintiff advised security guard that she worked on the 10th floor. Security guard then called the tenth floor and inquired about the keys. After speaking with a manager on the tenth floor, he then advised Plaintiff that no keys were found or turned in. Plaintiff did not access any other floors that day and alleges that this incident was apart of the harassment. Plaintiff then called the police to report the harassment and stolen keys.

16. As a further part of the conspiracy, it was agreed by and between Defendants, VERIZON, that Defendants, Officers Wieland and Baumgardner, acting in the conduct of their respective office, would harass or arrange to harass Plaintiff. When the Defendants, Wieland and Baumgardner arrived, Plaintiff handed Wieland a written statement concerning some of the harassment she'd been subjected to. Plaintiff advised the Defendants that she worked on the tenth floor and they proceeded to that floor. At that point, the security guard stopped

Plaintiff and officers, stating "I can't let you up there." Officer Baumgardner then asked why to which the security guard replied "they told me not to let the police up there." The female officer then replied "we have to go up there…" The security guard then said that he had to call first. While waiting, Officer Baumgardner asked the Plaintiff "are you taking any medication." To which the Plaintiff replied no. The security guard then advised Plaintiff and Defendant that it was ok to go to that floor. While in the elevator Officer Wieland stated to Plaintiff "it's common to lose keys all time." Upon arrival on the tenth floor, Plaintiff proceeded to show Defendant the location of the training class. Defendant, Officer Wieland, then told Plaintiff to hold on. Without speaking to anyone, the officer then walked to the desk next to the break room and handed Plaintiff her keys. Defendant, Officer Baumgardner stated to Plaintiff "you need to see a doctor…I'm just trying to help you."

17. By participating in the acts described above, Defendants deprived the Plaintiff of her fourteenth amendment right to equal protection of the laws, within the meaning of 42 U.S.C. § 1985(3)

18. As a direct and proximate result of the above-named unlawful conduct of Defendants, Plaintiff has suffered anxiety and severe mental anguish.

19. The next day, December 8th 2015, Plaintiff was advised by Defendant, Owens, that a supervisor, Courtney, wanted to speak to her. Defendant, Courtney, asked Plaintiff to tell her about the harassment report filed with police. Plaintiff explained the above-stated harassment she'd been subjected to. Defendant then stated that since Plaintiff was late that day, their policy is to terminate after one tardy. Plaintiff advised Defendant that she was unaware of that policy and contemplated returning to work due to the stress of the harassment. Defendant then stated that the Call Center Manager, Melissa Howell (Howell), wanted to speak with the Plaintiff.

20. Defendant, Howell, also inquired about the harassment report. Plaintiff relayed some of the details to Defendant and declined to speak about the rest due to fear of further retaliation. Defendant advised Plaintiff that if she didn't relay all of the harassing details, Plaintiff would have to speak to Human Resources. Defendant sent Plaintiff to the Human Resources Department to speak to human resources representative, Nancy Rodriguez (Rodriguez).

21. Defendant, Rodriguez, was already made aware of the report filed the day before and asked Plaintiff to tell her about the harassment. Plaintiff again relayed the details of the harassment she'd been experiencing. Defendant then stated that she would "look into it." In a follow-up conversation, Defendant advised Plaintiff that the keys were given to one of the managers who placed them in her desk and "forgot" to turn them in to security before she left.

22. The next day, December 9th 2015, an "attendance representative," name unknown at this time, had the class sign an

attendance policy. At the top of this policy it states that it is applicable to associate employees represented by the Union, IBEW 824. It also states that the policy is not applicable to probationary employees.

23. Plaintiff asked Defendant, Rodriguez, if there was a different policy for non-union members. Plaintiff also requested policy for probationary employees, to confirm the information given the day before concerning termination after one tardy. Defendant stated that she was unsure to both questions and would follow-up with Plaintiff once she found out. Plaintiff later received a call from Defendant advising her that she was waiting for a representative to get back to her. Defendant never followed-up or spoke to Plaintiff after this conversation.

24. None of the concerns raised during the December 8th 2015, meeting with Defendant were remedied. Plaintiff's work environment remained hostile and abusive.

25. On December 21st 2015, Plaintiff emailed Defendant, Rodriguez and cc'd Call Center Manager listed on Plaintiff's sales agreement, Juan Escoda. Plaintiff received no reply from Defendant to this email. On December 29th 2015, Plaintiff forwarded the same email. Plaintiff received an automated reply from Defendant, Rodriguez, stating she was out of the office. Defendant, Escoda, replied stating he would send up a few coaches to ensure Plaintiff was "clear on the attendance policy."

26. Shortly after, Plaintiff was escorted to a meeting room by Defendant, Courtney and introduced to a manager by the name of Enid Stokes. Union representative of IBEW 824, name unknown at this time, was also present. In the meeting Plaintiff was informed that being a member of IBEW 824 was not optional. Plaintiff was also advised that representation could not be refused. Defendant, Stokes and union representative continuously stated that Plaintiff could "quit" if she did not want to be represented by IBEW 824.

27. Plaintiff told Defendant, Courtney, that she felt uncomfortable and threatened. Plaintiff then asked to speak with an HR representative and was denied by Defendant.

28. The next day, December 30th 2015, Plaintiff was asked to return for a meeting with Defendant, Stokes, and another unidentified representative. In the meeting Defendant advised Plaintiff that she was being terminated for "disruptive behavior." Plaintiff asked Defendant what she was referring to and Defendant stated that Plaintiff had an "incident" earlier that day. Plaintiff informed Defendant that she had no idea what she was referring to and asked her to provide details. Defendant refused to provide Plaintiff with details. Plaintiff then asked for an HR representative and was denied by Defendant.

29. As Plaintiff got up to leave, both of Defendant's employees, Stokes, and the unidentified representative followed her into the elevator. Plaintiff stopped at the security desk and asked the security guard for assistance with contacting HR. Defendant, Stokes, then stepped into her personal space, pointed at the door and said "leave."

30. Plaintiff then walked outside and called the non-emergency line to have a record of the incident on file. Plaintiff walked several blocks away to wait in her car. Plaintiff received a call informing her that the officer was outside waiting for her.

31. R. Nieuwendom is an officer employed by the Tampa Police Department.

32. When Plaintiff arrived in front of the building Defendant, Officer R. Nieuwendom, was filling out a "Trespass Warning." Defendant asked Plaintiff for address, date of birth, and other personal information. Defendant then informed Plaintiff that she was being given the Trespass Warning for "refusing to turn in employee badge." Specifically, on the justification for issuance section, it states: "terminated and returned to return badge and security card, then refused to leave premise." The actions taken by Defendant were engaged in intentionally, knowing the untruthfulness of said statements.

33. As a result of the harassment and discharge, Plaintiff has lost wages, various benefits, and has suffered humiliation along with severe emotional and psychological distress. Plaintiff demands a trial by jury on all claims.

**Claim I:**
Title VII: Hostile Work Environment

34. Plaintiff incorporates by reference and makes a part of this count, paragraphs 1 through 33.

35. Defendant engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e(a)(1), by creating and maintaining a hostile and abusive work environment based on Plaintiff's sex.

36. The conduct of the supervising trainer and Defendant's other employees affected a term, condition or privilege of the Plaintiff's employment.

37. The harassment, of a sexual nature, was opposed by Plaintiff and continued after opposition.

38. The harassment of Plaintiff by Defendant was sufficiently pervasive and severe to create an abusive and hostile work environment. Defendant's behavior includes demeaning treatment, sexual remarks, interference with required assessments, ostracizing her and coercing her to resign.

39. The conduct of the supervising trainer and Defendant's other employees was engaged in while acting as agents of the Defendant and in the scope of their employment.

40. Defendant knew of the harassment and allowed it to persist and is therefore liable.

**Claim II:**
Title VII: Retaliatory Discharge

41. Plaintiff incorporates by reference and makes a part of this count, paragraphs 1 through 40.

42. Defendant engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e et seq., by terminating Plaintiff in retaliation for engaging in a protected activity.

43. After Plaintiff opposed and complained of sex-based harassment, she was subjected to further ill-treatment and ultimately discharged.

44. The actions taken by Defendant, including the termination of Plaintiff's employment, were a direct result of sexual harassment based on Plaintiff's sex and in retaliation for engaging in an activity protected by the law.

45. Defendant's claim of "disruptive conduct" as the reason for Plaintiff's termination is pretextual and was offered in an attempt to justify Defendant's unlawful behavior.

### Claim III:
### Conspiracy to Interfere with Civil Rights

46. Plaintiff incorporates by reference and makes a part of this count, paragraphs 1 through 45.

47. Defendant(s), VERIZON and TAMPA POLICE DEPARTMENT, acting under the color of state law, conspired to deprive Plaintiff of her Fourteenth Amendment right in violation of 42 U.S.C § 1985(3).

48. Defendant's actions were engaged in willfully, wantonly, recklessly and maliciously because of Plaintiff's sex.

49. Defendant(s), VERIZON and TAMPA POLICE DEPARTMENT committed acts to further the above-mentioned conspiracy.

50. As a result, Plaintiff has suffered deprivation of rights and injury to her person, and is therefore entitled to recover nominal, compensatory, and punitive damages.

### Claim IV:
### Unfair Labor Practice: Coercion, Surveillance and Retaliation

51. Plaintiff incorporates by reference and makes a part of this count, paragraphs 1 through 50.

52. Defendant, VERIZON and IBEW 824 engaged in unfair labor practices in violation of 29 U.S.C.A. § 158(b)(1).

53. Membership in IBEW 824 or any other union was not stipulated by any agreement between Plaintiff and Defendant.

54. Defendant, VERIZON and IBEW 824, attempted to coerce Plaintiff to join union in violation of her right to refrain from such activity.

55. Defendant, VERIZON, engaged in surveillance of Plaintiff's union activity in violation of 29 U.S.C.A. § 158(a)(1).

56. Defendant, VERIZON, retaliated against Plaintiff for refraining from union activity in violation of 29 U.S.C.A. § 158(a)(3).

### Claim V:
### Intentional Infliction of Severe Emotional Distress

57. Plaintiff incorporates by reference and makes a part of this count, paragraphs 1 through 56.

58. The conduct of Defendant, VERIZON, IBEW 824 and TAMPA POLICE DEPARTMENT as alleged above constituted extreme and outrageous conduct which was intended to cause the Plaintiff severe emotional distress.

59. By conspiring to "gas-light" Plaintiff, Defendant acted with both knowledge that severe emotional distress to the Plaintiff was substantially certain to result and with reckless indifference to the likelihood that severe emotional distress to Plaintiff would result.

60. Severe emotional distress has occurred as a result of the Defendant's actions. Plaintiff has suffered anxiety which has manifested in physical symptoms including chest and stomach pain.

61. As a result of Defendant's actions, specifically the noise campaign, Plaintiff must wear headphones in public and other places. Prior to the actions of the Defendant, Plaintiff was unaffected by these behaviors. Plaintiff must also wear earplugs in order to sleep. Prior to the actions of the Defendant, Plaintiff was able to and did sleep without earplugs. Plaintiff has also suffered other injury resulting in medical bills to be proven at trial.

62. As a result of the injury Plaintiff has suffered physically, emotionally and psychologically, Plaintiff is entitled to recover damages.

### VI:
### Prayer for Relief

WHEREFORE, Plaintiff, respectfully requests the following relief:

#### As to Claim I, II, & IV:

That the court finds in favor of the Plaintiff and a judgment be entered against the Defendant, VERIZON and IBEW 824 for full back pay, and other relief authorized pursuant to 42 U.S.C.A. § 2000e-5(g) in the amount of $100,000.

#### As to Claim III & V:

That the court finds in favor of the Plaintiff and a judgment be entered against the Defendants, VERIZON and TAMPA POLICE DEPARTMENT for compensatory, punitive, and exemplary damages for their malicious, reckless and outrageous conduct in the amount of $5,000,000.

Dated this 2nd day of August, 2016

*(signature)*

Charity L. Phillips
1902 Rutherford Drive
Dover, FL 33527